# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HANRAHAN,** | : | CIVIL NO. 1:17-CV-1495 |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **L.J. ODDO, WARDEN,** | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Robert Hanrahan ("Hanrahan"), a federal inmate currently confined at the United States Penitentiary, Allenwood, in White Deer, Pennsylvania ("USP-Allenwood"). (Doc. 1). Named as the sole respondent is the warden of USP-Allenwood. (Id.) The petition is ripe for disposition and, for the reasons set forth below, the court will transfer this action to the United States District Court for Eastern District of California.

## I. Background

On August 27, 2004, the Monterey County, California Sheriff's Department arrested Hanrahan for possession of a controlled substance for sale, while armed with a firearm, and related conspiracy charges. (Doc. 12-1 at 10-11, Montgomery County Arrest Record, Case Number SS042368B). On November 4, 2004, Hanrahan was released on bond. (Doc. 12-1 at 4, Declaration of K. Martin, Bureau of Prisons ("BOP") Management Analyst ("Martin Decl."), ¶ 3).

In January 2006, Hanrahan fled to Mexico. (Martin Decl. ¶ 4). On November 12, 2006, Hanrahan was re-arrested at the United States-Mexico border for a bond violation in the Monterey County Case. (Martin Decl. ¶ 5). On November 15, 2006, Hanrahan was held at the Monterey County Sheriff's Department for the bond violation. (Id.)

On April 12, 2007, the Monterey County Superior Court sentenced Hanrahan to a thirteen-year term of imprisonment for possession of a controlled substance for sale, while armed with a firearm, and related conspiracy charges. (Martin Decl. ¶ 6). He received a credit of 331 days towards that state sentence. (Id.) On April 23, 2007, Hanrahan was transferred to the California Department of Corrections to being serving his state sentence. (Martin Decl. ¶ 7; see Doc. 12-1 at 16).

While serving his state sentence, Hanrahan was indicted on numerous federal counts related to possession and distribution of methamphetamine, cocaine, and marijuana. See United States v. Hanrahan, No. 2:11-cr-119-01 (E.D. Cal.). On August 19, 2011, federal authorities took Hanrahan into temporary custody via a writ of habeas corpus ad prosequendum to answer the charges. Id. Hanrahan ultimately pleaded guilty to the federal charges relating to possession and distribution of methamphetamine, cocaine, and marijuana. Id. at Doc. 141. On September 29, 2014, the United States District Court for the Eastern District of California sentenced Hanrahan to a 375-month term of imprisonment. Id. at Doc. 210. The judgment ordered the federal sentence to run concurrent with the state sentence imposed in the Monterey County Superior Court. Id. The federal

2

sentencing court also recommended that Hanrahan be imprisoned in the custody of the BOP to serve the remainder of both his state and federal sentences, with custody credits beginning from November 12, 2006. Id. The sentencing transcript also stated that Hanrahan should receive prior custody credit beginning from November 12, 2006. (Martin Decl. ¶ 9; Doc. 12-1 at 38, Sentencing Transcript).

Hanrahan remained in federal custody pending approval of his designation to the BOP. (Martin Decl. ¶ 9). On July 23, 2015, the Monterey County District Attorney's Office relinquished custody of Hanrahan to federal authorities. (Martin Decl. ¶ 10). His projected release date from the state sentence was September 2, 2018. (Id.)

On July 31, 2015, the United States Attorney for the Eastern District of California requested that the BOP retain primary custody over Hanrahan. (Martin Decl. ¶ 11). On August 14, 2015, the BOP approved the request to retain custody of Hanrahan. (Martin Decl. ¶ 12). On August 27, 2015, Hanrahan was designated to a BOP institution. (Id.)

Pursuant to BOP policy, the BOP computed Hanrahan's federal sentence to commence on September 29, 2014, the day it was imposed. (Id.) On August 24, 2014, Hanrahan's sentence was reviewed for possible credits for pre-sentence time pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1972) and Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993). (Martin Decl. ¶ 17; Doc. 12-1 at 76-77, Willis/ Kayfez Calculation Worksheet). Hanrahan was serving a state sentence at the time his federal sentence was imposed and received a Willis credit from August 27, 2004

3

through November 3, 2004, and from November 12, 2006 through April 12, 2007. (Id.)

On January 17, 2017, Hanrahan filed a motion with the federal sentencing court requesting that the court reduce the amount of time remaining on his sentence based on custody credits he claims he earned, but the BOP denied. United States v. Hanrahan, No. 2:11-cr-119-1, at Doc. 282. On July 12, 2017, the federal sentencing judge denied the motion and found that "credit for time served is a matter within the province of the Bureau of Prisons under § 3585(b)." Id. at Doc. 297.

On October 20, 2017, the Designation and Sentence Computation Center ("DSCC") sent a letter to the federal sentencing judge requesting permission to adjust the 375-month sentence imposed for the period of April 12, 2007 through September 28, 2014. (Martin Decl. ¶ 14; Doc. 12-1 at 89-90, DSCC Letter). The letter requested that an amended judgment be issued, citing U.S.S.G. § 5G1.3(b). (Id.) The record reflects that the sentencing court has not yet responded to the letter. (Martin Dec. ¶ 15).

## II. Discussion

Hanrahan challenges his sentence calculation and contends that he is entitled to additional credit against his federal sentence. (Doc. 1). He asserts that, on September 29, 2014, the United States District Court for the Eastern District of California sentenced him to 375 months' imprisonment, to run concurrently with the thirteen-year state sentence he was then serving, and further, that the sentencing judge intended that he receive credit towards the service of his federal

4

sentence commencing on November 12, 2006.  (Id.)  Hanrahan requests that the court grant a *nunc pro tunc* designation and credit his federal sentence as commencing on November 12, 2006.  (Id. at 5-6).

A.     **Primary Jurisdiction Doctrine**

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  In determining the commencement of a sentence, it is therefore clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . . "  18 U.S.C. § 3585(a).

The computation of a federal sentence is complicated when an inmate is subject to sentences imposed by more than one sovereign.  The primary custody doctrine provides that the first sovereign to arrest an individual is entitled to have that individual serve a sentence imposed by that sovereign before he serves a sentence imposed by another sovereign.  See Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa. 1996) aff'd, 100 F.3d 946 (3d Cir. 1996).  The arresting sovereign retains primary jurisdiction until it relinquishes jurisdiction by release on bail, dismissal of charges, parole, or expiration of the sentence.  Id.  Transfer of a state prisoner pursuant to a federal writ of habeas corpus ad prosequendum does not amount to a relinquishment of a state's primary jurisdiction.  Chambers, 920 F. Supp. at 622-23.  A prisoner produced under such a writ is essentially "borrowed" from the state with

5

primary jurisdiction.  Id.; see also Thomas v. Brewer, 923 F.2d 1361, 1366-68 (9th Cir. 1991).

In the present matter, the State of California was the first sovereign to arrest and charge Hanrahan.  Therefore, California had primary jurisdiction over Hanrahan.  While Hanrahan was temporarily transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum, he nevertheless remained in the primary custody of the state of California.  See Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000) ("[A] prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner").  Hanrahan's temporary transfer to federal custody pursuant to a writ of habeas corpus ad prosequendum was insufficient to interrupt the state's primary jurisdiction.  George v. Longley, 463 F. App'x 136, 140 (3d Cir. 2012) (citing Ruggiano v. Reish, 307 F.3d 121, 125 n. 1. (3d Cir. 2002)).  Hanrahan was in primary state custody at the time of sentencing on his federal charges.  Hanrahan remained in the primary custody of the State of California until he was officially relinquished to federal authorities on July 23, 2015.

If an inmate was in primary state custody when the federal sentence was imposed, the BOP must determine whether the federal sentencing court expressed an intent as to whether the federal sentence should run concurrently or consecutively with the non-federal sentence.  Setser v. United States, 566 U.S. 231, 244 (2012).  If the federal sentencing court is silent, the BOP construes the court's silence as an intent to impose a consecutive sentence.  See, e.g., Galloway v. Warden

6

of F.C.I. Fort Dix, 385 F. App'x 59, 60 (3d Cir. 2010) (citing BOP Program Statement 5160.05). In such a case, the federal sentence commences only upon the state's relinquishment of primary jurisdiction over the petitioner. Id. at 62 n.3 (citing Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000)). A state court's direction that the state and federal sentences run concurrently does not bind the Federal Bureau of Prisons or federal courts in any way. Barden v. Keohane, 921 F.2d 476, 478 n.4 (3d Cir. 1991) (citing U.S. CONST. art. VI, cl. 2.)

During Hanrahan's sentencing on the federal charges, the federal judge ordered the sentence to run concurrent with the state sentence in the Monterey County Superior Court. See United States v. Hanrahan, No. 2:11-cr-119-1, (Doc. 210, Judgment). The federal sentencing court further recommended that Hanrahan be imprisoned in the custody of the BOP to serve the remainder of both his state and federal sentences. Id.

The court must next determine when the federal sentence commenced, and whether there are any credits to which Hanrahan may be entitled.

### B.   Computation of Federal Sentence

The Attorney General is responsible for computing federal sentences, see 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329, 333 (1992); Armstrong v. Grondolsky, 341 F. App'x 828 (3d Cir. 2009), and has delegated that authority to the BOP under 28 C.F.R. § 0.96. Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination. First, the date on which the federal sentence commences and, second, the extent to which credit may

7

be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

### 1. *Commencement of Sentence*

The BOP generally determines the date upon which a federal sentence commences. See, e.g., Goodman v. Grondolsky, 427 F. App'x 81, 82 (3d Cir. 2011) ("In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence."). A federal sentence cannot commence earlier than the date on which it was imposed. Rashid v. Quintana, 372 F. App'x 260, 262 (3d Cir. 2010), citing, United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998); see also BOP Program Statement 5880.28, Chapt. 1, pp. 12-13.

Section 3585 of Title 18 of the United States Code provides, in part:

(a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

Hanrahan's federal sentence commenced on September 29, 2014, the date of his federal sentencing.

### 2. *Prior Custody Credit*

Section 3585(b) of Title 18 of the United States Code provides:

(b) Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

8

> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). Thus, under § 3585(b), prior custody credit cannot be granted if the prisoner has received credit toward another sentence. The Supreme Court has made clear a defendant cannot receive a "double credit" for his detention time. Wilson, 503 U.S. at 337.

In evaluating Hanrahan for prior custody credit, the BOP determined that he was entitled to a Willis credit from August 27, 2004 through November 3, 2004, and from November 12, 2006 through April 12, 2007. Hanrahan also seeks credit under U.S.S.G. § 5G1.3(b), which states, in part, ". . . the *court* shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment, if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." (emphasis added). Pursuant to this guideline, the sentencing court, and not the BOP, may adjust the commencement date of a sentence. See, e.g., Escribano v. Schultz, 330 F. App'x 21, 23 (3d Cir. 2009) (holding that the sentencing court's authority under § 5G1.3 of the Guidelines is distinct from the BOP's authority under § 3585(b)).

Hanrahan's federal judgment recommends that he "be imprisoned in custody with BOP to serve remainder of sentence in both State and Federal cases with custody credits beginning from 11/12/2006." (Doc. 12-1 at 27, Judgment). During

9

the sentencing hearing, the court discussed its intent that Hanrahan receive credits against his federal sentence to November 12, 2006. (Doc. 12-1 at 38, Sentencing Transcript). However, neither the judgment nor the sentencing transcript reference an adjustment pursuant to U.S.S.G. § 5G1.3(b). As such, it is unclear if the sentencing court intended for the BOP to grant all credits authorized pursuant to BOP policy, or if it intended that Hanrahan's sentence be adjusted to November 12, 2006 pursuant to U.S.S.G. § 5G1.3(b). Respondent argues that the habeas petition should be denied because the BOP cannot provide Hanrahan this credit without an amended judgment ordering a § 5G1.3(b) adjustment. Alternatively, respondent requests that the court transfer this action to the United States District Court for the Eastern District of California.

The written judgment and the sentencing transcript are silent as to the application of U.S.S.G. § 5G1.3(b), and therefore provide no indication of the sentencing court's intent with respect to the credits Hanrahan should receive. At this juncture, it is simply unclear whether the sentencing court meant to apply § 5G1.3(b). Only the sentencing court can clarify its intent concerning a § 5G1.3(b) adjustment. Accordingly, the court will transfer this action to the United States District Court for the Eastern District of California. It is well-settled that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see also Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Argentina v. Sniezek, 2010 WL 2632561 (M.D. Pa. Jun. 28, 2010) (finding it necessary to transfer the § 2241 habeas petition to the

sentencing court to determine its intent with respect to restitution payments) (citing Verissimo v. INS, 204 F.Supp.2d 818, 820 (D.N.J. 2002) (finding that "a habeas petition may be transferred to the district court of the state in which the petitioner was sentenced and convicted, even if the petitioner was transferred to prison in a different state.")).

**III. Conclusion**

Based on the foregoing discussion, the court will transfer this action to the United States District Court for the Eastern District of California.

An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     April 15, 2019